AKIN & HARRIS, by brief, for plaintiff in error.
A. W. FITE, solicitor-general, *contra.*

---

RUMPH *v.* THE STATE.

1. An unsigned letter in the handwriting of a person resting under a charge of larceny of a bale of cotton, addressed to one of the owners of the cotton and sent to him by mail, is admissible in evidence against the writer on his trial for the larceny, the letter suggesting that he, the owner, had better see the person charged with the larceny and make him pay money, that the owner can double the cotton in money instead of paying cost, and that from all the writer has heard the owner will lose the case. Though the letter ended abruptly and had no signature, there is no evidence that it was not as complete as the writer wanted or intended it to be, and it embraced no offer or proposition to compromise. On the contrary, it manifested an effort to influence the owner to drop the prosecution for the sake of getting pay for his cotton, without disclosing that the person thus attempting to influence

him was the individual who was accused of the theft. The letter was relevant, and that it was in the handwriting of the accused was sufficiently proved to warrant the court in admitting it in evidence as a document emanating from him.

2. The evidence as a whole warranted the verdict, and there was no error in denying a new trial. *Judgment affirmed.*

October 12, 1892.

Before Judge FISH. Macon superior court. May term, 1892.

John Rumph was indicted for larceny of a bale of ginned cotton. He was convicted; his motion for new trial was overruled, and he excepted. The grounds of the motion are, that the verdict is contrary to law, evidence, etc.; and that the court erred in admitting in evidence, over objection of his counsel, a letter of which the following is a copy:

"March 6th, 1892.

"Mr. Ro. Frederick: Dear Sir,—With much honor to you I desire to ask of you what is you going to do with that nigger case about that cotton. If you will let me say if I was in your place I would see him and make him pay you so much money, as you will have the money instead of coot; from all talk I her you will loss the case. While you can double that cotton in money you had better do so. I am one of yor derres friends. I hope you will not think that nigger from"

There was no signature. The letter was accompanied by an envelope postmarked "Fort Valley, March 7th, 1892," addressed "Mr. R. O. Frederick, Marshallville, Ga." The objections were: (1) there was no sufficient proof that defendant wrote it or that he had anything to do with it; (2) without reference to the proof, or lack of proof, as to defendant's connection with the fragmentary portions of the letter, it was irrelevant and inadmissible, the language and contents of the same being not in the nature of admission of guilt or confession, but of proposition to compromise; (3) the letter itself was evidently incomplete.

As to defendant's guilt the evidence was circumstantial and conflicting, and there was evidence of conflicting statements made by him about the matter, some of which were evidently untrue. As to the letter the evidence was, in substance: One Chapman testified: I have seen defendant write; have received notes with his signature to them. To the best of my knowledge that is a very good specimen of his writing. I could not say whose writing this is. I can only say this resembles his handwriting—this is just like his writing. With reference to this letter I simply swear that it looks like John Rumph's writing. I could not say that I had seen hands that looked very much like that. From seeing John's handwriting that resembles it. I suppose it does resemble other writing I have seen. The reason I say that resembles his handwriting is because I have received notes from him, and that resembles notes I have received—the handwriting. I could not swear that that is his handwriting. I do not know of anybody else's handwriting that that resembles. I believe it is his handwriting because there is a peculiarity about the letters. I do not know that I ever noticed that same peculiarity about anybody else's handwriting. I have seen John Rumph write and have some knowledge of his handwriting from having seen him write. From having seen him write and having received notes from him I say this resembles his handwriting. I do not know anybody else whose handwriting it is. Q. "Whose do you take that handwriting to be, from having looked at it, and having seen him write and having received notes from him?" A. "Well, I could not say. I could not say whose handwriting. I believe, to the best of my knowledge and belief, it is only that it resembles his handwriting. If I had gotten this around home I might have said that I believed this to be John's handwriting. I could not say whose handwriting I believe

it to be from looking at it and from the formation of the letter; it is just like his handwriting though; but to say I believe it was John's handwriting I could not— could not swear it was." By the court. "The solicitor don't ask you to swear whose handwriting it is, but merely asks you whose handwriting you believe it is, from your knowledge of the handwriting of any one else whom you have seen write." A.. "Well, from seeing John write and from receiving notes from him, I would take this to be John's handwriting. . . From seeing his writing and seeing this it recognizes his handwriting. Well, I do not know that I do know his handwriting apart from everybody else's—only in some cases." Q. "Would you swear now that you are sufficiently familiar with the handwriting of John Rumph to distinguish a letter written by him from letters written by twenty other people?" A. "Just as I have stated, it resembles John's handwriting. Well, it may resemble other handwriting. I am not an expert in handwriting. I get about as many letters as common people, some written very well and some not so well; do not know that I get many written like that or that I ever did get letters from others whose handwriting resembled that. Do not know that I swore awhile ago that this handwriting resembled other handwritings as much as it resembles John's. I might have done it. I would not swear that was his handwriting; I just only believe it and it resembles John's handwriting. That is the extent of my belief in this case, that it resembles John's handwriting." Q. "Take several handwritings—these letters,—would you recognize this handwriting to be John's in preference to all these?" A. "No, I would not take this to be his handwriting in preference to this; I would take this to be his. If I had any amount of handwriting before me, and the handwritings were not exactly alike, I would take that

one to be his. The handwriting I saw him write was done with a pencil. There is a difference in pencil and pen writing. I am more familiar with pencil writing, because all the writing of his that I have seen was made with a pencil. Well, I could not say that this writing here resembles his, because I never have seen any that he wrote with pen and ink. Of these four specimens of handwriting, from my acquaintance with his writing I would take this to be his." Rowe Frederick testified : I received this letter through the mail at Marshallville, addressed like it is in the letter. I must have received it a day or two after it is dated. This is all of the paper that I received. This is the envelope that the letter came in. This letter is all that was in the envelope. I opened it carefully. I am a member of the firm of Frederick, Slappey & Frederick. (It was from this firm that the cotton was alleged to have been stolen.) In the evidence for defendant there was no reference to this letter, and the defendant made no reference to it in his statement.

H. A. Mathews, W. S. Wallace and J. W. Haygood, for plaintiff in error.

C. B. Hudson, solicitor-general, by Harrison & Peeples, *contra*.