## McCOMBS *v.* THE STATE.

1. Upon the trial for forgery of one indicted under the name of "Anna McCombs" and who was known as "Nannie McComb," the circumstance that two letters were found in her possession, one of which was addressed to "Dear Sister" and was unfinished and unsigned, the other not addressed to any one and signed "Unhappy Nan," was not of itself sufficient to prove that the accused wrote such letters, and thus establish the handwriting thereof as a standard with which to compare the handwriting of the alleged forged instrument.
2. The circumstance that shoes precisely similar to those delivered by a merchant to an unidentified person upon a forged order were found, more than four months thereafter, in the possession of one charged with the forgery, was not, without more, sufficient to authorize a finding that the accused wrote such order.
3. The verdict was not warranted by the evidence, and the refusal of a new trial was erroneous.

Submitted December 18, 1899. — Decided January 24, 1900.

Indictment for forgery.    Before Judge Henry.    Floyd superior court.    July term, 1899.

Anna McCombs was convicted of the crime of forgery, and upon her motion for a new trial being overruled, she excepted. The evidence for the State was, in substance, as follows:    The order alleged to have been forged, viz.: "Mr. Kuttner,—Please send by this girl two pair of shoes, No. 5 1/2, E last, one suitable for every-day wear and one Sunday pair, the latest styles in vici kids.    I am busy cooking cake.    Send the bill & I will send back the money by the girl, and oblige, Mrs. Blunt Hamilton."    Admission by counsel for the accused that Mrs. Hamilton did not sign or write, or authorize the signing or writing of this order.    Kuttner testified, that the order was presented to him, in Floyd county, in March, by a negro woman, and that he then delivered to her four pairs of shoes on it, of the value

of $12. He did not know this woman and did not remember how she looked. She said she was working for Mrs. Hamilton, and that Mrs. Hamilton sent her to get the shoes. He never saw the accused before she was arrested. She was arrested four months after he furnished the shoes upon the order. As to the identification of the shoes found in her possession after her arrest, he testified: "I saw defendant after her arrest. I recognize the shoes on her feet. She had a pair of shoes I furnished on this order, wearing them. It was a Bolton shoe. We sell a thousand pair yearly. I don't know where she got them shoes. I can't begin to name all my shoe customers. Have sold that shoe four years; no other dealer in Rome sells it. It is widely known and sold by merchants in other cities throughout the South. I swear that shoe went out of my store. I swear by the number on it; don't remember the number now, did at the time. The regular number is 6704. I think hers was either 6705 or 6706. I do not remember exactly what number it was. The number of the shoe was either 5 or $5\frac{1}{2}$. The lot number I don't know; can give no idea what it was. We handled a lot of shoes of different numbers. I remember this one by number, because it was a pair given on that order. I remember distinctly four pairs were given, and this was one of them. I can not remember what the number was. This bill of shoes came in September or October. This was one pair of the order she had on. I remember that from my knowledge, but don't remember who had the order. I remember the four pairs of shoes I gave her; these I have seen since her arrest. I remember the number of the shoe from my own knowledge, I don't remember the number of the shoe exactly. I do not remember what number it was then. I don't attempt to say to whom I furnished these shoes, except it was to a negro girl." Wimpee testified that he was present after the arrest of the accused, when search was made of her property; that he found a trunk claimed to be hers at the residence of Lizzie Davis, in which he found letters directed to Annie McCombs, also photographs of herself, and two pairs of new shoes, never worn. The pair of shoes shown witness in court much resembled a pair he found in the trunk. He could not say the letters shown him in court

were found in the trunk.    He identified the trunk shown him as the one found at Lizzie Davis's.    Lizzie Davis testified, that the accused lived with her; that she did not know her as "Annie McCombs," but as "Nannie McComb."    She identified the trunk in court as belonging to the accused.    It is stated in the brief of evidence that "The State introduced in evidence trunk and its contents as contained in the tray thereof, which contents consisted, among other things, of a photograph, letters directed to Nannie McCombe, and a letter signed 'Unhappy Nan,' and an unfinished letter beginning 'Dear Sister,' which the State used for the purpose of identifying the handwriting of the letter signed 'Unhappy Nan' and the unfinished letter with the handwriting of alleged forged order.    Also, the State introduced in evidence the shoes presented to the different witnesses, and about which they testified."    The accused, in her statement, said she got the shoes from a man named Charley Brown, who left them with her to keep until he could send them to his mother and sister.

*J. S. Crawford* and *Henry Walker*, for plaintiff in error.
*Moses Wright, solicitor-general,* contra.

FISH, J.    1. The evidence, in our opinion, was not sufficient to show that the accused was guilty of the offense charged. Therefore we deem it unnecessary to pass upon the numerous exceptions, in the motion for a new trial, to the admission of evidence and to instructions given to the jury.    The mere fact that the two letters referred to in the official report were found in the possession of the accused was not of itself sufficient to show that she wrote them, and thus establish the handwriting thereof as a standard with which to compare the handwriting of the forged order.    The mere possession of such letters would not even prove that she could write.    Section 5247 of the Civil Code provides that "Other writings, proved or acknowledged to be genuine, may be admitted in evidence for the purpose of comparison by the jury."    As said by Atkinson, J., in *McVicker* v. *Conkle*, 96 *Ga.* 595, "Where a paper is offered for the purpose of comparison, its execution by the maker must be either proved or acknowledged by him.    Before it could

be set up as a standard by which to judge of the genuineness of another paper, the handwriting must be established as being that of the alleged maker of the collateral paper. Its force as evidence can not be made dependent upon inference; because, in order to determine by comparison the identity of makers by similarity of handwriting, it is of prime consequence that we first establish a genuine standard; otherwise, it would be impossible to reach even an approximately correct conclusion." In Van Sickle v. People, 29 Mich. 61, it was held that the mere finding of a diary on a party, with an admission by him that it was his, is not a sufficient authentication of the writing to justify its use as a standard. Graves, C. J., in delivering the opinion, said: "The circumstance, if such was the truth, that the plaintiff in error owned the book and claimed it as his, might have helped to show, that the writing in it was actually made by him, but standing alone and by itself it was inadequate to show that fact. It is certainly possible that he wrote the matter contained in the diary, but the probability that he did so is not sufficiently assured by evidence of his ownership to warrant the assumption which was made. It would, I think, be a very unsafe rule to hold that the possession and ownership of a book or document may authorize an inference that the owner can write, that he did write the matter contained in it, and then, on the foot of these inferences, charge him as the author of other and wholly disconnected writings." The letters in the case under consideration should not have been admitted in evidence, had they been properly objected to. Although it is not clear that a proper objection was made to their introduction, yet, as it is manifest that they were neither proved nor acknowledged to be in the handwriting of the accused, they furnished no standard with which to compare the handwriting of the forged order.

2. The only other circumstance that the State could have relied upon for a conviction was, that shoes exactly similar to those delivered by Kuttner to the bearer of the forged order— whose identity with the accused was not established — were found, more than four months after such delivery, in the possession of the accused. Considering the fact that the testimony

of the only witness who undertook to identify the shoes found in the possession of the accused with those delivered upon the forged order does not, in our opinion, establish such identity beyond a reasonable doubt, the facility with which such articles can pass from hand to hand, and the time which had elapsed from the delivery of the goods upon the order to the finding of them in possession of the accused, and her statement in explanation of her possession, which, if true, was consistent with her innocence, we do not think that this circumstance alone was sufficient to authorize the jury to find her guilty. See *Johnson* v. *State*, 48 *Ga.* 117; *Tarver* v. *State*, 95 *Ga.* 222; *Brooks* v. *State*, 96 *Ga.* 353; *Jones* v. *State*, 105 *Ga.* 649.

3. The evidence introduced for the purpose of connecting the accused with the forgery was wholly circumstantial, and, while it may have been sufficient to raise a strong suspicion of her guilt, it was not sufficient to exclude every other reasonable hypothesis; and hence her conviction was unauthorized.

*Judgment reversed.    All the Justices concurring.*