## BURDEN *v.* THE STATE.

It was cause for the grant of a new trial, that writings which were material as tending to establish the guilt of the accused were admitted over objection that there was no proof that she had executed them.

No. 407. NOVEMBER 17, 1917.

Indictment for murder. Before Judge Hodges. Elbert superior court. May 28, 1917.

*Thomas J. Brown,* for plaintiff in error.

*Clifford Walker, attorney-general, A. S. Skelton, solicitor-general,* and *M. C. Bennet,* contra.

BECK, P. J. Alice Burden and Frank Random were jointly indicted for the offense of murder, it being charged that they feloniously killed Jack Burden in the manner set forth in the indictment. Alice Burden was put upon trial, and the jury returned a verdict of guilty with a recommendation. In evidence for the State were introduced a piece of paper with the word "Allice" written on it, and a letter which Hailey, the deputy sheriff of the county, testified he had obtained from Frank Random. The letter was as follows: "My Dear friend Frank: If you please take it on yourself and when I get out I will give you $50 dollars and let me tell them that you done it if you please and don't you tell them papa was over there Sat morning. You just say you shot him an I will give you $50 dollars. So by by Allice Blackwell." Blackwell had been the maiden name of the prisoner. There was also evidence tending to show improper intimacy between the man and the woman jointly indicted. Relatively to these two papers Hailey testified: "I got this note or letter from some one in jail. I got it from Frank Random. It was in his possession. That note has been in my possession and I got it from Frank Random. I had Alice Blackwell to write her name, or write her name across a piece of paper. At the time I got her to write her name I offered her no inducement or hope of reward. I did not hold over her any fear of punishment. Whatever she said or done was done freely and voluntary. She just wrote 'Allice.' Comparing this name there, 'Allice,' with what I saw her write, yes, sir, it looks very much like the same handwriting to me. In spelling the name that she wrote for me, she spelled it A-l-l-i-c-e, and it is spelled A-l-l-i-c-e on this note. . . I do not know the handwriting of this woman. I do not suppose I would know it

from anybody else. I keep the jail. Any mailing of letters by the prisoners, it is supposed to go through me. So far as I know, it all does. This woman has not mailed any letters since she has been in there, that I know of. I have never seen her write a letter. I have never seen her write anything, except what I exhibited a while ago. I asked her to write it, to see if it looked like the other handwriting on the note. I am not an expert in handwriting. I do not claim to be. I know where I got this letter, but I do not know where it came from. I did not get it from Alice. I do not know whether Alice ever saw it or not. I do not know who wrote it. As to what became of the paper that she wrote the word 'Allice' on, I did not try to keep it. I do not know what I did with it. . . I asked her to write her name. She wrote 'Allice' was all. I asked her to write 'Alice,' and she wrote it. The word 'Allice' that she wrote has been lost. I did not pretend to keep it; just as soon as I saw it looked so much like, I walked on out, and I did not take it with me, and I never kept it. It looked like the same writing, and I walked on out; that was all I wanted to know. I thought may be we could compare her handwriting later. I just looked at it and dropped it down, and left it where it was, in the jail. I have not looked for it since; it was in the cell, on a little piece of paper. The jail has been cleaned out and swept out every day since then. As to whether or not this word, 'Allice,' that I recognize as being the same, yes, sir, it looks to me like the same handwriting. There was a peculiarity in the way she spelled her name; she used two 'l's' in the spelling Alice. . . . Taking the first three letters there, it looks like the second one and the third one has been erased, but it does not look like the first one has. As to that not being her signature there, I do not know whether it is or not. I won't swear that is the one she wrote for me. I would not swear that is the same piece of paper. That was all she wrote for me, just the word 'Allice.' As to what is the similarity between that and the one I found here, I do not find any. I do not find any similarity. I do not know whether she wrote this one or not. As to that being the one that I got from her, it looks like it has been erased. I got this paper out of a box in jail, out of Alice's box. I went there to get it, by the direction of Alice Burden. I went by the court's direction, just now. [It is admitted by defendant's

counsel that she directed him.] It looks like there has been some erasures there. As to there being anything there to indicate what the balance of that word was, it looks like it was Alice, at first. As to my finding a single letter on there that is the same, or similar, to any letter in the word 'Alice,' or any part of this note, no, sir, I do not think I do. As to my finding a single word in the letter that has some similarity to the word 'Alice' in the letter, no, sir, I do not find any comparison between those two."

The letter and the piece of paper were both admitted in evidence over objection that the signature to the letter, and the word "Allice" upon the piece of paper, had not been shown to be in the handwriting of the accused. We think this objection to both was well taken. In one place the testimony of Hailey is somewhat obscure, in that it is not clearly shown whether the piece of paper that was introduced was the one which the State claimed to be that upon which the witness had at first testified that the defendant in his presence wrote the word 'Allice;' but considering all this evidence together, we are of the opinion that it sufficiently appears that the piece of paper with the word 'Allice' written on it went to the jury on the theory that it was the same piece of paper on which the defendant had written the word in the presence of the deputy sheriff. This was error, because the sheriff did not identify the paper as that upon which the word had been written in the first instance. His testimony upon the first direct examination was to the effect that he had thrown the paper down, and that the jail had been swept out several times. It is true that he stated that this piece of paper produced on the trial had been taken from the prisoner's box under her direction; but that did not establish its identity with the first piece of paper.

It was also error for the court to permit the witness, who had merely seen the defendant write one word sometime before the trial, to testify as to the genuineness of the disputed signature to the letter. If the witness had qualified as an expert in handwriting, or had sworn that upon having seen the prisoner write once, that is, when she wrote the word "Allice," he knew or could identify her handwriting, and had, after that statement, identified the signature "Allice Blackwell" as that of the prisoner, this would have been sufficient proof of the execution of the writing of the letter to allow it to go to the jury, and they could have passed

upon the value of such testimony. But the witness distinctly said that he did not know the handwriting of the accused; and under the testimony relative to the execution of the document the court should have excluded it upon the objection presented. *Wimbish* v. *State, 89 Ga. 294* (15 S. E. 325). We have, of course, dealt only with the objection as made, and not with other objections which possibly might have been made.

Having held that it was error to admit the writings referred to, it follows that a new trial must be granted, because the evidence was material and necessarily harmful, the letter being one from a woman to a man who was jointly indicted with her and with whom there was some evidence tending to show criminal intimacy, asking him to take upon himself the commission of the crime, and offering him inducement to do so. If the jury believed that the letter was actually written by the accused, it would no doubt have had great weight with them in reaching their verdict.

*Judgment reversed. All the Justices concur, except Fish, C. J., absent.*