4

for appellant.

*Eva L. Sloan,* for appellee.

### 50396. MARTIN v. THE STATE.

CLARK, Judge.

This appeal is from convictions in which the accused was tried upon two indictments. One of these indictments charged appellant jointly with his wife and a third individual with the crime of aiding and abetting Steven Ward Parks in an unlawful sale of a contraband drug in violation of the Georgia Drug Abuse Control Act. The other indictment arose out of the first in that appellant alone was charged with possession of a pistol during the commission of the crime. The third co-defendant was not tried jointly with the husband and wife. A directed verdict of acquittal was granted for the wife. Accordingly, this appeal is limited to Martin.

On the afternoon of December 11, 1973, Jennifer Thompson, an undercover agent of the Georgia Bureau of Investigation, purchased one ounce of reputed MDA. She purchased the amphetamine drug from Steven Parks in his apartment and paid him $280 by means of fourteen twenty-dollar bills of which the serial numbers had been noted. Later that evening, by pre-arrangement, the undercover agent returned to the Parks apartment to make a purchase of a pound of the same drug. The police had prepared a stake-out in the neighborhood. Parks went outside to his car, removed a brown paper bag from his trunk, and then returned to his apartment, where he sold Agent Thompson one pound of the narcotic substance.

These two sales and the appellant's presence with his wife in the vicinity of the apartment building at the time of the second sale are not disputed. The crucial question presented to the jury was what involvement, if any, the appellant had in the drug transactions.

John Willis of the GBI surveillance squad testified that on the night of the second sale he observed appellant drive up to the building and descend from his car with a brown paper bag in his hand, and go inside the apartment

building. A few minutes later he saw appellant and Parks leave the building together. They went to a car belonging to Parks, opened the trunk, removed something and then Parks returned to the apartment while appellant went to his car.

The undercover agent testified that Parks left the apartment, returned with a brown paper bag, went into his bedroom, and then walked into the bathroom. When he called her to join him, Parks had a clear plastic bag containing white material. She was unable to state whether the white material she saw came from the brown paper bag. After the substance had been weighed she directed Parks to put it in her suitcase while she returned to her car to get the money. She then went downstairs where she got three other agents to return with her. Agent Willis then went to appellant's car and arrested him and his wife. A pistol in his possession was seized. Appellant and his wife were then taken to the Parks apartment for a complete search. Nothing of an incriminating nature was obtained at that time, but when the two were later booked, some of the marked $20 bills from the first sale were taken from their possession.

Appellant, a freelance reporter and photographer, testified in his own behalf during which he introduced photographs he had taken of crimes, accidents, and assorted catastrophes. He explained his possession in his car of a "radio scanner" which picks up police and emergency signals, thereby leading him to the various news scenes. On the night in question, his radio received police signals which caused him to go to that apartment building to cover the potential story. He testified that he entered the building with a notebook in his hand, and, being unable to discern if anything was happening, he promptly returned to his car. He stated that he exited the building at approximately the same time as another person, later identified to him as Parks. Appellant further asserted that he acquired possession of the marked $20 bills when he and his wife were taken to the Parks apartment. He confirmed the testimony of his wife who had stated that after she had been searched in the apartment that she found the money in a large stuffed chair in the Parks apartment, had offered it to the agents

who declined to accept the bills, and that she then gave her husband about half of the money.

At the conclusion of the appellant's case the state in rebuttal used Agent Copeland. He stated that at the time the appellant's gun was seized, he had also taken a looseleaf notebook from appellant's possession. Agent Copeland had removed several pages from the notebook and returned the notebook to the appellant. One page, marked State's Exhibit 7-B, was identified by Copeland as "the first page in the notebook that I removed from Mr. Martin" (T. 437). Among the notations on this piece of paper appeared the following: "Steve—H39—400—8-225." State's witnesses had previously testified that Steven Parks lived in apartment 39-H and that the drug prices offered by Parks were $280 for an ounce and $260 per ounce for a pound. Over objection of defense counsel that the page had "not been properly identified," the trial court admitted this piece of paper into evidence. (T. 438).

*Held:*

1. The trial court did not err in denying appellant's motion to quash the indictment as it properly charged defendant with violating the Georgia Drug Abuse Control Act. The substance therein named as being prohibited was susceptible to proof by the state. *Ellis v. State,* 132 Ga. App. 684 (209 SE2d 106). The indictment was sufficient to inform the defendant as to the nature of the crime with which he was charged. The motion to quash the indictment was correctly denied.

2. Appellant's assertion that the trial court erred in failing to require the state to comply with his discovery motions is without merit. "There is no statute or rule of procedure of force in this State which requires a solicitor general or other prosecuting officer to make his evidence, documentary or otherwise, available to the accused or his counsel before trial." *Godwin v. State,* 133 Ga. App. 397, 398 (211 SE2d 7).

3. Appellant contends the state failed to establish a proper foundation for the introduction into evidence of Exhibit 7-B and enumerates as error the admission of this writing. As a general rule, a writing will not be admitted into evidence unless the offering party tenders proof of the authenticity or genuineness of the writing. *Ma-Jet-Ic*

*Furnace Corp. v. Great Southern Trucking Co.,* 94 Ga. App. 25 (1) (93 SE2d 589). There is no presumption of authenticity, and the burden of proof rests upon the proffering party to establish a prima facie case of genuineness. *Manning v. Carroll,* 206 Ga. 158 (56 SE2d 278); McCormick on Evidence, (2d Ed. 1972) § 218.

Our rules of evidence provide a wide variety of means by which a party may authenticate a writing. A witness who saw the writing being made may, of course, testify to its genuineness. Code § 38-706; *Brewer v. Commercial Credit Co.,* 66 Ga. App. 138 (17 SE2d 243). Testimony by an expert or by one familiar with the handwriting may be sufficient to authenticate a letter or writing. Code Ann. § 38-708; *Rumph v. State,* 91 Ga. 20 (16 SE 104). Similarly, the introduction of other writings for comparison by the jury lays a sufficient foundation for the receipt in evidence of the questioned document. Code § 38-709; *Hyde v. State,* 196 Ga. 475, 482 (26 SE2d 744); *Vizard v. Moody,* 119 Ga. 918, 924 (47 SE 348).

While the genuineness of a letter may be shown by circumstantial evidence (*McDay v. Metropolitan Life Ins. Co.,* 51 Ga. App. 791 (181 SE 871)), the courts have been careful to safeguard the rule which allows only authenticated writings to be introduced in evidence. Thus, it has been held that the face of the writing itself, such as the contents, the letterhead, the signature, etc., does not authenticate the letter in the absence of other evidence showing its genuineness. *Burgess v. Simmons,* 207 Ga. 291, 296 (61 SE2d 410); *Manning v. Carroll,* 206 Ga. 158 (56 SE2d 278).

In the case sub judice, the only evidence tending to authenticate State's Exhibit 7-B was the testimony of Agent Copeland that the page was seized from a notebook in appellant's possession. Since this page contained evidence incriminating to its author, we must determine whether appellant's possession of the notebook constituted sufficient authentication of the writing to justify its admission as evidence. In *McCombs v. State,* 109 Ga. 496, 498 (34 SE 1021), the Supreme Court stated: "The mere fact that the two letters . . . were found in the possession of the accused was not of itself sufficient to show that she wrote them . . . The mere possession of such

letters would not even prove that she could write."

A similar conclusion was reached in *Burden v. State,* 147 Ga. 412 (94 SE 232). Alice Burden and Frank Random were jointly indicted for murdering the former's husband. At Alice Burden's trial, the state introduced into evidence a letter implicating the two in the murder. The salutation of this incriminating letter was, "My dear friend Frank," and it was signed "Allice Blackwell." The state produced evidence showing that the defendant's maiden name was Blackwell, that she customarily spelled her first name "Allice," that the two defendants shared an "improper intimacy," and that the letter was taken from Frank Random's possession. Despite these factors, it was held that the letter should not have been admitted in evidence, since the circumstances were insufficient to establish that the letter was written by the defendant or was otherwise genuine.

In limited instances, custody may in fact form the basis of authentication. This frequently occurs where a writing is shown to have been made in the regular course of business and is found in its usual business location. Code Ann. § 38-711. This rule has never been expanded, however, to include private custody or simple possession, since the circumstances of private possession are infinitely more varied than those of business or official custody.

While possession alone is insufficient to establish a prima facie showing of authenticity, it should be recognized that possession, together with other circumstances, may meet the burden. In *Rampley v. State,* 81 Ga. App. 782 (60 SE2d 180) this court upheld the admissibility of incriminating notes purportedly written by the defendant. The notes had been thrown by the defendant to co-defendants at the time of their incarceration. While recognizing the ruling of *Burden,* the circumstances indicated that, due to his incarceration, only the defendant could have had the opportunity to write the notes.[1]

_____

[1]The court in *Rampley* further distinguished *Burden* on the basis of the defendant's supplemental statement to

In contrast to the circumstances of *Rampley,* the appellant herein, his wife, or any other number of people who may have had previous access to the seized notebook could have entered the notations in question. In the total absence of identification as to the authorship of this notebook page, it was error to admit the writing in evidence. *Folsom v. Folsom,* 228 Ga. 536 (186 SE2d 752).

State's Exhibit 7-B tended to show previous dealings by the appellant with Steven Parks and added a crucial link in the state's effort to prove appellant's involvement in the drug transaction. Since this writing formed a major part of the state's case, its erroneous admission cannot be said to constitute harmless error. This is especially true in that it appears to be the only physical evidence directly contradicting appellant's testimony and was emphasized in the district attorney's closing arguments.

4. There is no merit in the enumeration of error based upon the overruling of defendant's motion for a directed verdict because the evidence at that stage warranted submission of the case to the jury.

5. We deal next with the enumeration of error which attacks the portion of the charge dealing with the designation of the substance which was sold as a drug prohibited for sale under the Georgia Drug Abuse Control Act. The essence of this charge was as follows: On December 11, 1973, the date of the alleged sale, there was a valid and existing federal regulation designating 3, 4, 5-trimethoxy amphetamine as having potential for abuse because of its hallucinogenic effect. Since the Georgia Drug Abuse Control Act prohibits the sale of drugs thus designated by federal regulations, 3, 4, 5-trimethoxy amphetamine is a substance, the sale of which is prohibited by Georgia law. The defendant is charged with the sale of 2, 4, 5-trimethoxy amphetamine. The state contends that the substance known as 2, 4, 5-trimethoxy amphetamine is a positional isomer of the prohibited drug, 3, 4, 5-trimethoxy amphetamine. It would be for you, the jury, to determine whether or not 2, 4,

---

the jury, in which he admitted writing the notes in question.

5-trimethoxy amphetamine is a positional isomer of the prohibited drug. If you determine that this substance is a positional isomer of the prohibited drug, then I charge you that the sale of 2, 4, 5-trimethoxy amphetamine would be prohibited by the Georgia Drug Abuse Control Act.

The Georgia Drug Abuse Control Act, Code Ann. § 79A-9 (now repealed by Ga. L. 1974, p. 221, but in effect for this case) prohibits the unauthorized sale of, "Any drug which contains any quantity of a substance *designated by present regulations* promulgated under the Federal Act as having potential for abuse because of its depressant or stimulant effect on the central nervous system or its hallucinogenic effect." Code Ann. § 79A-903 (b) (3). (Emphasis supplied). Our Supreme Court construed this provision to incorporate only those drugs prohibited by the Federal Act at the time of the enactment of the Georgia law in 1967. *Johnston v. State,* 227 Ga. 387, 392 (2) (181 SE2d 42). The court's charge was apparently based upon 21 USCA § 812 (Pub. L. 91-513), which was enacted on October 27, 1970. An examination of the federal regulations, as they existed in 1967, reveals no prohibition of 3, 4, 5-trimethoxy amphetamine or its isomers. The charge was therefore erroneous.

The state argues that any error in the charge was harmless, since the sale of the substance in question is prohibited under other sections of the Act. The Georgia Drug Abuse Control Act further prohibits the sale of "Any substance which the State Board [of Pharmacy] shall determine to be habit-forming because of its stimulant effect on the central nervous system or any drug . . . having a potential for abuse because of its depressant or stimulant effect on the central nervous system or its hallucinogenic effect." Code Ann. § 79A-903 (b) (4). Although 2, 4, 5-trimethoxy amphetamine is not specifically designated, the State Board of Pharmacy prohibits, within the meaning of this code section, the following broad category of drugs: "Any derivative of amphetamine having a stimulant effect upon the central nervous system" and "any salt or any isomer . . . of the substances in this section." Rules of Georgia State Board of Pharmacy, Rule 480-9-.01(c). The state contends that 2, 4, 5-trimethoxy is prohibited by this section, and thus,

reversible error cannot be based upon the court's charge.

Under the provisions of the Administrative Procedure Act, courts may take judicial notice of the rules promulgated by the State Board of Pharmacy. Code Ann. § 3A-108; *Tischmak v. State,* 133 Ga. App. 534 (211 SE2d 587). In the absence of a specific designation of the drug, however, the courts cannot "notice" whether a certain substance falls within the prohibitive scope of a broad category of drugs. Therefore, in order for the state to meet its burden of proving that 2, 4, 5-trimethoxy amphetamine is a prohibited substance under the Georgia Act, it must show (1) that this drug is either a derivative of amphetamine or a salt or isomer of an amphetamine derivative, and (2) that this drug has "a stimulant effect upon the central nervous system." While the state's expert witness testified that 2, 4, 5-trimethoxy amphetamine was a derivative of amphetamine, there was little testimony concerning this drug's effect upon the central nervous system. (T. 239, 240). This court, however, need not decide whether the state's evidence was sufficient in this regard, since this is a question which should have been presented to the jury. *Ellis v. State,* 132 Ga. App. 684 (209 SE2d 106). Since the jury was erroneously charged and therefore made no factual determination as to whether or not the drug possessed those properties which would render its sale unlawful under the Georgia Act, the verdict cannot be sustained.

6. There is no merit in the remaining enumerations of error.

*Judgment reversed. Pannell, P. J., and Quillian, J., concur.*

SUBMITTED MARCH 11, 1975 — DECIDED MAY 16, 1975 — REHEARING DENIED JUNE 5, 1975.

*B. L. Spruell,* for appellant.

*Lewis R. Slaton, District Attorney, Carter Goode, R. David Peterson, Assistant District Attorneys,* for appellee.