## A09A0667. HOLLIE v. THE STATE.
(679 SE2d 47)

MIKELL, Judge.

After a jury trial, Jim Phillip Hollie was convicted of aggravated child molestation, aggravated sexual battery, and four counts of child molestation. Hollie was sentenced to 30 years, 15 of which he was ordered to serve in confinement. On appeal, Hollie argues that the trial court improperly limited his cross-examination of the victim, P. M., and admitted nonprobative hearsay evidence at trial. Hollie also challenges the trial court's requirement that he register as a sexual offender. For the reasons provided below, we affirm.

On appeal from a criminal conviction, we view the evidence in the light most favorable to the jury verdict.[1] So viewed, the evidence shows that P. M., who was 14 years old at the time of trial, began talking to Hollie, her cousin, over the phone in July 2005. P. M. testified that she and Hollie regularly spoke on the phone at all hours during the night and sent each other text messages. As time passed, the conversations and messages became sexual in nature, and Hollie asked her if she had ever engaged in certain sexual acts.

Hollie visited P. M.'s house in July. P. M. testified that during the visit, she rode with Hollie to a nearby restaurant. En route, Hollie massaged P. M.'s stomach and legs in response to her asking him to show her the special touch that another cousin had told her about. P. M. testified that Hollie told her to unzip her pants and she complied, then he touched her vagina and penetrated her with his

---

[1] *Brewer v. State*, 280 Ga. 18, 19 (1) (622 SE2d 348) (2005).

2

fingers. P. M. recalled that they drove to a nearby park where Hollie asked her if she had ever given a blow job and if she would give him one. P. M. testified that she put her mouth on Hollie's penis twice while at the park.

P. M. recalled that later that night, Hollie, who was sleeping in the living room, called her on her cell phone and asked her to come to the living room, where he rubbed her leg, told her to lie down, and then inserted his fingers into her vagina. Hollie also touched P. M.'s vagina with his penis but did not penetrate her. The same events occurred the following night. P. M. maintained that each time after Hollie's penis touched her vagina, she said no and went to her room. Hollie left P. M.'s house the next morning.

P. M. testified that she and Hollie continued to talk on the phone and send text messages to each other after the incident. When Hollie returned for a visit a couple of weeks later, however, P. M. avoided him and had no sexual contact with him. After Hollie left, P. M. told her brother's girlfriend about Hollie inserting his fingers into her vagina, and then told her brother and her mother. P. M. was taken to the Lawrenceville Police Department, where she was interviewed by Detective Curtis Clemons.

P. M. shared with Detective Clemons text messages that she received from an unknown origin later that summer, which Clemons described as threatening and insulting. Clemons preserved the messages by making copies of them and read the content of the messages to the jury. Clemons testified that as a part of his investigation he determined that during a one-month period, there were 127 text messages and 248 phone calls made between P. M.'s and Hollie's cell phones. After concluding his investigation, Clemons obtained arrest warrants for Hollie. Hollie testified that he did not touch P. M.

1. In his first enumerated error, Hollie argues that his conviction should be reversed because the trial court prevented him from impeaching P. M. with an e-mail transmission. At trial, the content of the message was not revealed because P. M. testified that she did not write it nor did she recognize it. When Hollie attempted to introduce the document into evidence, the state objected that the proper foundation had not been laid, and the trial court agreed.

The document at issue is attached as Exhibit 1 to the trial transcript and appears to be an e-mail from P. M. to Shelby McPherson,[2] who is a first cousin of Hollie and P. M. In the e-mail, the writer apologizes for lies told and states that she wanted to show Jim what it felt like to be lied to. Tidwell testified at trial but was not

---

[2] McPherson's married name is Tidwell.

asked about the e-mail transmission. Hollie argues that at the very least, the document would have impeached P. M.'s oath to give truthful testimony.

"The admission of evidence is a matter which rests largely within the sound discretion of the trial judge."[3] As an appellate court, we will not interfere with its rulings absent an abuse of that discretion.[4]

> As a general rule, a writing will not be admitted into evidence unless the offering party tenders proof of the authenticity or genuineness of the writing. There is no presumption of authenticity, and the burden of proof rests upon the proffering party to establish a prima facie case of genuineness.[5]

P. M. testified that she did not write nor did she recognize the document at issue. Hollie did not offer any evidence in an attempt to satisfy his burden of proof to establish a prima facie case of genuineness, other than having P. M. testify to her e-mail address. Though the e-mail transmission in question appears to have come from P. M.'s e-mail address, this alone does not prove its genuineness. Thus, we find no abuse of discretion in the trial court's ruling on the document's admissibility.

Hollie argues that the document was relevant for impeachment purposes, regardless of whether the proper foundation had been laid. "A witness may be impeached by contradictory statements previously made by [her] as to matters relevant to [her] testimony and to the case."[6] In the instant case, there was no testimony elicited from P. M. that would have been contradicted by the document at issue. For example, P. M. was never asked if she told anyone that she was lying about Hollie or if she was trying to exact revenge for Hollie lying to her. Had this testimony been elicited from her, the e-mail transmission may have been admitted for purposes of impeachment.

Nonetheless, even if the e-mail should have been admitted for impeachment purposes, we find the error harmless because the inference raised in the e-mail, that P. M. was a liar and was motivated to lie about Hollie, was cumulative of other evidence introduced in the case. Joseph Hollie, Jr., Hollie's nephew, testified that P. M. called him on his cell phone and home phone several times a day until he changed his number and disconnected his house phone. Joseph

---

[3] (Citation omitted.) *Alexander v. State*, 239 Ga. 108, 110 (1) (236 SE2d 83) (1977).

[4] *Gresham v. State*, 281 Ga. App. 116, 117 (635 SE2d 316) (2006).

[5] (Citations omitted.) *Martin v. State*, 135 Ga. App. 4, 6-7 (3) (217 SE2d 312) (1975).

[6] OCGA § 24-9-83.

testified that P. M. asked him to visit her, and he refused. Tidwell testified that P. M. had accused Hollie of telling Joseph not to talk to her and of trying to turn the entire family against her; and that P. M. was upset with her and Hollie because they would not make Joseph have a sexual relationship with her. The jury obviously chose to believe P. M.'s testimony and resolved any conflicts in the evidence in P. M.'s favor, which it was authorized to do.[7]

2. Hollie argues that Clemons's testimony regarding the content of the text messages and the number of calls and text messages between P. M. and Hollie constituted inadmissible hearsay, the admission of which warrants the reversal of his conviction. Because Hollie raised no objection to this testimony below, this argument is waived on appeal.[8] Nonetheless, we point out that even assuming the testimony at issue was inadmissable hearsay, Hollie's convictions stand because the testimony of P. M., alone, was sufficient to support the convictions.[9] We also note that Clemons's testimony about the number of conversations and messages was cumulative of other evidence in the case. Both P. M. and Hollie testified that there were several phone calls made between their phone numbers. P. M. testified that the calls were between she and Hollie, and Hollie testified that the majority of the calls were between P. M. and other members of the family who used his telephone or were between relatives visiting P. M. who were using her phone to call him, and that some were between he and P. M. Clearly, the jury believed P. M.'s explanation over Hollie's.

3. In his last two related enumerations of error, Hollie argues that the trial court erred when it required him to submit to lifetime registration as a sexual offender. Hollie contends that by requiring him to submit to lifetime registration as a sexual offender, the trial court exceeded the maximum sentence allowed under OCGA § 16-6-4. We find no error.

OCGA § 42-1-12, the statute governing Georgia's sexual of-fender registration, requires that any person who is convicted on or after July 1, 1996, of a criminal offense against a victim who is a minor or is convicted on or after July 1, 2006, of a dangerous sexual offense, register as a sexual offender.[10] Hollie argues that the statute should not apply to him because OCGA § 16-6-4 (d) did not list registration as a sexual offender as a possible punishment for the violation of the statute. This argument is unpersuasive, and Hollie

---

[7] See *Kemp v. State*, 271 Ga. App. 654, 657 (2) (610 SE2d 623) (2005).

[8] *Carreno v. State*, 272 Ga. App. 229, 231 (3) (612 SE2d 62) (2005).

[9] See OCGA § 24-4-8. See also *Crane v. State*, 291 Ga. App. 414, 415 (662 SE2d 225) (2008); *Boynton v. State*, 287 Ga. App. 778, 779 (1) (653 SE2d 110) (2007).

[10] See OCGA § 42-1-12 (e) (1)-(2).

cites no case law in support of his position.

"In *Smith v. Doe*, 538 U. S. 84 (123 SC 1140, 155 LE2d 164) (2003), the Supreme Court of the United States held that a statutory requirement for retroactive registration of sex offenders was nonpunitive."[11] "[T]he designation of a person as a sexual offender is neither a sentence nor a punishment but simply a regulatory mechanism and status resulting from the conviction of certain crimes."[12] As such, the statute does not require that the offender be given notice that he will have to register as a sexual offender.[13] In fact, it is a separate statute, the violation of which is a separate and distinct offense for which one can be prosecuted.[14] Therefore, Hollie's arguments that he should have been provided notice of the registration requirements fails.

Hollie also argues that he must be resentenced because the trial court could not sentence him to lifetime registration as a sexual offender because the punishment exceeded the maximum punishment allowed for crimes for which Hollie was convicted. This argument, too, fails. As stated above, the registration requirement is not a punishment. Consequently, a lifetime registration requirement does not extend the maximum sentence allowed under OCGA § 16-6-4. Additionally, the registration requirements must be met regardless of whether they were included as a term of probation.[15] It follows then that a judge is not required to confine the sexual registration requirements to the sentencing parameters of the offense for which the defendant is convicted nor is the trial court authorized to do so as the registration requirements are statutory, not subject to the trial court's discretion.[16]

*Judgment affirmed. Johnson, P. J., and Ellington, J., concur.*

DECIDED MAY 15, 2009 

*Mark A. Yurachek*, for appellant.

---

[11] *Frazier v. State*, 284 Ga. 638 (1) (668 SE2d 646) (2008).

[12] *Grovenstein v. State*, 282 Ga. App. 109, 113 (2), n. 7 (637 SE2d 821) (2006), citing Ga. L. 2006, pp. 379, 381, § 1.

[13] See generally *Petway v. State*, 291 Ga. App. 301, 303 (661 SE2d 667) (2008) (no notice of registration requirements required before probation imposed); *Peters v. Donald*, 282 Ga. App. 714, 715 (639 SE2d 345) (2006) (required first offender to register as a sexual offender, despite the fact that such was not part of his plea agreement).

[14] See *Frazier*, supra at 640 (1) (discussing OCGA § 42-1-12 (n) (3)).

[15] See *Petway*, supra.

[16] See generally *Peters*, supra at 716 (neither prosecutor nor trial court could exempt defendant from registration requirements).

*Daniel J. Porter, District Attorney, Jimmie E. Baggett, Jr., Assistant District Attorney*, for appellee.