## S91A0247. FARLEY v. THE STATE.
(400 SE2d 626)

BELL, Justice.
Brent Farley was convicted of the malice murder of Bernice Peek, and was sentenced to life imprisonment. He was also convicted of the aggravated assault of Larry Collins. Farley appeals, raising four enumerations of error.[1] In his first three enumerations, he contends the trial court erroneously allowed hearsay testimony. In his remaining enumeration, he claims the trial court erred by failing to instruct the jury on the presumption of his good character. For the reasons we give in this opinion, we find no merit in his enumerations, and affirm.

1. On the evening of August 17, 1990, Peek and Collins went to a house in Eatonton, Georgia, to have sex.[2] According to Collins, Farley

---

[1] The crimes were committed on August 17, 1990. On September 17, 1990, appellant was indicted. The verdict was returned and appellant was sentenced on October 29, 1990. The notice of appeal was filed on November 2, 1990. On November 16, 1990, the court reporter certified the trial transcript and the clerk of the trial court certified the record. The record was filed in this Court on November 20, 1990. On January 4, 1991, the appeal was submitted for decision without oral argument.

[2] The nature of Collins' and Peek's relationship on August 17, 1990, is unclear. Collins testified that, for a long time before August 17, he "used to go with" Peek.

entered the house later that evening, and found Collins and Peek there.[3] They were reclining on a bed, and Peek was naked.[4] Collins said that, despite Collins' entreaties not to hurt them, Farley shot him and Peek with a pistol.[5] Collins was shot once, in the head. Peek was shot twice, in the head and back. Her head wound was fatal.

We find that the evidence was sufficient for a rational trier of fact to have found Farley guilty of malice murder and aggravated assault beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Dorothy Finley lived near the house where Collins and Peek were shot. After Farley shot Collins and Peek, Collins exited the house and went to Finley's residence, where he told her that Farley had shot him and Peek. At trial, Finley repeated what Collins told her. In his first enumeration, Farley contends that Finley's testimony was hearsay, and that the trial court erred by allowing her to give it. However, we find that the testimony was admissible. *Lumpkin v. State*, 255 Ga. 363, 365 (4) (338 SE2d 431) (1986); *Edwards v. State*, 255 Ga. 149, 150-151 (2) (335 SE2d 869) (1985); *Cuzzort v. State*, 254 Ga. 745 (334 SE2d 661) (1985).

3. On the day of the shooting, Farley had a conversation with Charles Jordan. Jordan testified that Farley told Jordan during their conversation about an argument Peek had with Farley the previous day, which was Farley's payday. According to Jordan, Farley said that Peek had been arguing with him so much that he told her, "here, take the check. Take all the money if that will shut you up," and that he had given Peek his check. Jordan said that Farley did not appear to be angry when he told Jordan this, and laughed with Jordan about it.

In his second enumeration, Farley contends that Jordan's testimony was hearsay, and that the trial court erred by overruling his objection to the testimony. We find this contention is not meritorious, as Jordan's testimony was admissible, not to prove the truth of what Farley told Jordan, but to explain Farley's conduct and ascertain his motive and state of mind. OCGA § 24-3-2. There was no direct evidence of the nature of Farley's relationship with Peek. However, Peek's and Farley's conduct — an argument, followed by Farley giving Peek his entire paycheck — suggests that they had some sort of domestic or romantic relationship. Such a relationship, in turn, forms

---

[3] There is no evidence how Farley found them there.

[4] Collins' state of dress at that time is not apparent from the record. Dorothy Finley, who lived near the scene of the shootings, testified that Collins came to her house after the shooting, wearing only his underwear.

[5] There is no direct evidence of the nature of Farley's and Peek's relationship. However, there was circumstantial evidence, described in Division 3 of this opinion, that Farley and Peek may have had a domestic or romantic relationship, and therefore that Farley may have shot Peek and Collins because he was jealous.

the basis for an inference that Farley shot Peek and Collins because Farley was jealous.

4. Deborah Finley lived at the same residence in Eatonton as Dorothy Finley.[6] At trial, the state called both women as witnesses. During Deborah Finley's testimony, the district attorney asked her whether she had seen Peek the day Peek was killed. Finley responded to this question with the following testimony:

> Yeah, she came into my house and sat on the front porch. It was me, her, my mama and Cheryl and them kids playing in the yard. She sat there for a good while and then all of a sudden she left and I went in the house, got dressed and got ready to go out and I didn't see Bern[i]ce, Brent [Farley] that whole evening. I left home that whole night. I was on the strip, went to the Blue Club, drank a few beers and Ricky Ingram came over there and said, "Deborah, do you know Bern[i]ce Peek got shot?" I said, "Huh? . . . Who shot her?" "Brent Farley." I said, "You mean the same Bern[i]ce Peek that. . . ."

At this point, Farley's counsel interrupted Finley's testimony, with a motion for mistrial. He objected to Finley's testimony on the ground that she had implicated his client with her hearsay repetition of what Ricky Ingram told her (Ingram did not testify). The district attorney agreed that it was hearsay; said that he was withdrawing the question; and indicated that he wished the court to instruct the jury to disregard the answer. The court then told the jury:

> Ladies and gentlemen, I instruct you at this time to disregard the answer of this witness to the question the District Attorney asked. The question has been withdrawn. Disregard the answer and give it no consideration whatsoever in your deliberations.

Farley's counsel renewed his motion for mistrial, and the court overruled it. In his third enumeration of error, Farley contends the court erred in overruling his renewed motion. We find this enumeration presents no abuse of discretion.

The decision whether Finley's testimony was so prejudicial that it warranted a mistrial was within the trial court's discretion. See *Sabel v. State*, 250 Ga. 640, 644 (5) (300 SE2d 663) (1983). "No fixed rule can be laid down as to when impermissible and prejudicial statements

---

[6] Although it seems likely that they were related, whether they were relatives is unclear from the record.

made in the course of a trial can be cured and each case must be examined in the light of its relevant circumstances." *Bullock v. Bullock*, 244 Ga. 538, 539 (1) (261 SE2d 331) (1979). The relevant circumstances in this case include the nature of Finley's testimony, the other evidence in this case, and the curative instructions of the trial court. Id.

Finley's repetition of what Ingram said was prejudicial, as the only other evidence identifying Farley as Collins' and Peek's assailant was Collins' testimony. Moreover, Collins' credibility was weakened to some extent through impeachment evidence that Collins was a convicted felon. However, Collins testified unequivocally that Farley was the assailant, and the court gave prompt and strong curative instructions. Under these circumstances, we find the trial court did not abuse its discretion in denying the renewed motion for mistrial.

5. In his final enumeration, Farley contends the court erred by failing to give his requests to charge on the presumption of good character. We disagree with Farley, as there was no testimony concerning his general reputation in the community. *Aldridge v. State*, 247 Ga. 142, 145-146 (3) (274 SE2d 525) (1981).

*Judgment affirmed. All the Justices concur, except Hunt, J., who concurs in the judgment only.*

DECIDED FEBRUARY 21, 1991.

*Lawrence & Ford, Francis N. Ford,* for appellant.
*Joseph H. Briley, District Attorney, James L. Cline, Jr., Assistant District Attorney, Michael J. Bowers, Attorney General, Mary H. Hines,* for appellee.