## A02A1809. BROWN v. THE STATE.

(579 SE2d 87)

RUFFIN, Presiding Judge.

A jury found Larry Brown guilty of rape, aggravated sodomy, aggravated sexual battery, two counts of aggravated assault, kidnapping, false imprisonment, and possession of a knife during the commission of a felony.[1] The trial court denied Brown's motion for new trial, and he appeals to this Court, asserting numerous errors. Finding that Brown's assertions lack merit, we affirm.

The evidence shows that the victim arrived in the Boatrock Road area in a taxi, and she was approached by several men, whom the taxi driver believed to be drug dealers. The taxi driver pulled farther down the street and ordered the victim out of the car.

As the victim walked toward a pay phone, Kahbarius Jackson, one of the men who had approached the taxi, grabbed her by the arm. Jackson accused the victim of taking his "dope," and he pulled her to a secluded area. Jackson and the victim were joined by Brown and others, and Jackson told Brown that the victim was "trying to play games." Brown then told the victim, "[w]e kill too many people over bigger things. We don't want to kill you over something this small." According to the victim, Jackson took a knife from Brown and pointed it at the victim. The victim testified that, while Jackson dumped her purse on the ground, Brown "put his hands in [her] bra and he felt on [her] breasts and pulled [her] jumpsuit down and checked [her] vagina and anus" looking for drugs. Although neither Jackson nor Brown found any drugs, Jackson found an empty bag used for packaging cocaine. Jackson informed the victim, "it has to be something for something. It can't go down like this . . . ," indicating that the victim would have to perform fellatio.

Jackson, Brown, and the others took the victim to a bricked-in area where they forced the victim to orally sodomize them. During the next several hours, Jackson, Brown, and others raped and sodomized the victim. A crowd gathered around the scene, and the victim overheard someone say that she "tried to steal [Jackson's]

---

[1] The jury acquitted Brown of one count of aggravated sodomy, and the trial court dismissed one count of aggravated sexual battery.

dope. She [is] paying for it." After the victim threw up, Brown began hitting her with a belt, ordering her to "get up." Brown also threatened to burn the victim if she did not get up, and he held a lighter between her legs.

Eventually, the victim was rescued by Pam Burke, who took the victim to Burke's apartment. The victim was then taken to a hospital, where Dr. Steven Bashuk performed a rape examination. Based upon this and other evidence, the jury found Larry Brown guilty, and this appeal ensued.

1. In three enumerations of error, Brown contends that the trial court erred in failing to sever his trial from that of his co-defendants. In ruling on a motion for severance, a trial court is required to consider the following factors:

> (1) whether the number of defendants creates confusion as to the law and evidence to be applied to each; (2) whether a danger exists that evidence admissible against one defendant might be considered against the other notwithstanding instructions to the contrary; and (3) whether the defenses are antagonistic to each other or each other's rights.[2]

We review a trial court's ruling on a motion for severance under an abuse of discretion standard.[3]

(a) Brown argues that the trial court should have severed his trial because the defendants were asserting antagonistic defenses. According to Brown, whereas he and Jackson claimed that the sexual encounter was consensual, a third co-defendant maintained that he was not present and produced alibi witnesses. We do not find these defenses antagonistic. All three defendants denied criminal culpability, and none of the defenses implicated another defendant.[4] Assuming, for the sake of argument, that the defenses were antagonistic, " 'that antagonism does not, in and of itself, require severance.' "[5] In any event, we find no abuse of discretion in the trial court's denial of the motion for severance on this basis.

(b) Brown also contends that his motion for severance should have been granted because the admission of his redacted statement to police violated the principle enunciated in *Bruton v. United States*.[6] However, the provisions of *Bruton* apply to the statement of a

---

[2] *Harris v. State*, 257 Ga. App. 42, 44 (2) (570 SE2d 353) (2002).
[3] See id.
[4] See *Redding v. State*, 239 Ga. App. 718, 721-722 (4) (521 SE2d 840) (1999).
[5] *Harris*, supra.
[6] 391 U. S. 123 (88 SC 1620, 20 LE2d 476) (1968).

co-defendant that inculpates the defendant, not the defendant's own statement.[7]

Brown also argues that, even if proper, the redaction required by *Bruton* was nonetheless prejudicial because it misled the jury. In his original statement, Brown told police that Jackson had a knife, which Brown then described. In accordance with *Bruton*, the statement was redacted to remove Jackson's name. Brown suggests that this redaction left the jury with the impression that the knife was his, thus prejudicing him. However, "[t]his argument completely ignores well-established law that as a party to that crime, [Brown] was equally culpable" regardless of who actually held the knife.[8] It follows that the trial court did not abuse its discretion by denying Brown's motion on this ground.

(c) Finally, Brown argues that he was entitled to severance in order to call Jackson as a witness. Because of Jackson's Fifth Amendment rights, Brown was unable to call him during the joint trial. In order to have a motion for severance granted on this basis, Brown must show that any such testimony would have been exculpatory.[9] Brown contends that Jackson "would have provided testimony that the sexual encounter between [Brown] and [the victim] . . . was consensual." It is abundantly clear that Brown's defense at trial was that the encounter was consensual and other testimony was admitted, tending to support this theory. Thus, Jackson's testimony — assuming he would have testified — would have been cumulative. Under these circumstances, we find no abuse of discretion in the denial of Brown's motion for severance.[10]

2. Brown maintains that the trial court erred in allowing the State to improperly bolster the victim's credibility. Before the victim was called to testify, the State called her fiancé and, over objection, asked him to "describe [the victim] as far as her truthfulness, her honesty." The fiancé responded, "[i]n relation to me she has been forthcoming." According to Brown, this testimony improperly invaded the jury's province with regard to assessing witness credibility.

"It is well settled that in no circumstances may a witness' credibility be bolstered by the opinion of another, even an expert, as to whether the witness is telling the truth."[11] Here, we can discern no appropriate reason for admitting the fiancé's testimony regarding

---

[7] See *Thomas v. State*, 268 Ga. 135, 137 (485 SE2d 783) (1997) ("For the admission of a co-defendant's statements to constitute a *Bruton* violation the statements *standing alone* must *clearly inculpate* the defendant.") (punctuation omitted).

[8] *Ricarte v. State*, 249 Ga. App. 50, 54 (3) (547 SE2d 703) (2001).

[9] See *Cain v. State*, 235 Ga. 128, 130 (218 SE2d 856) (1975).

[10] See *Ledbetter v. State*, 202 Ga. App. 524, 525 (2) (414 SE2d 737) (1992).

[11] (Punctuation omitted.) *Buice v. State*, 239 Ga. App. 52, 55 (2) (520 SE2d 258) (1999), aff'd, 272 Ga. 323 (528 SE2d 788) (2000).

the victim's general veracity. Nonetheless, we find no grounds for reversal because it is highly improbable that the fiancé's testimony contributed to the verdict.[12] During her direct examination, the victim admitted that she had lied in the past to her fiancé concerning her drug use and had hidden her drug use from him. Under these circumstances, we doubt the jury was overly swayed by the fiancé's testimony that the victim was always forthcoming with him.

3. According to Brown, the trial court erred in excluding evidence of the victim's past conduct in which she consented to sex in exchange for drugs. Brown contends that, notwithstanding the Rape Shield Law,[13] he was entitled to question the victim about such prior acts to establish his consent defense. After a hearing on the matter, however, the trial court concluded that the Rape Shield Statute precluded Brown from questioning the victim in this regard.

"We review the trial court's exclusion of evidence under the Rape Shield Statute for abuse of discretion."[14] To warrant admission of evidence involving the victim's prior sexual behavior, a trial court must find that

> the past sexual behavior directly involved the participation of the accused and find[ ] that the evidence expected to be introduced supports an inference that the accused could have reasonably believed that the [victim] consented to the conduct complained of in the prosecution.[15]

During the hearing on the State's motion in limine, Brown's statement was tendered, but Brown did not proffer any evidence to demonstrate the basis for his belief or assumption that the victim consented to Brown's subsequent conduct. Accordingly, the trial court excluded the evidence. We find no abuse of discretion in this ruling.[16]

4. Brown asserts that the trial court erred in excluding a portion of the victim's statement to police. The victim apparently told the police that Jackson had offered to accept sex in exchange for drugs, but she replied that she did not do that anymore. The trial court excluded the victim's reply, reasoning that it violated the Rape Shield Statute. On appeal, Brown asserts that the trial court's ruling unfairly abridged his right to a thorough cross-examination of the victim. We disagree. "The admission of evidence at trial is within the

---

[12] See *Bright v. State*, 238 Ga. App. 876, 880 (4) (520 SE2d 48) (1999).

[13] See OCGA § 24-2-3.

[14] *Jackson v. State*, 254 Ga. App. 562, 565 (2) (562 SE2d 847), overruled on other grounds, 275 Ga. 576 (571 SE2d 376) (2002).

[15] OCGA § 24-2-3 (b).

[16] See *Jackson*, supra.

discretion of the trial court."[17] Having already excluded evidence of the victim's prior sexual conduct, the trial court did not abuse its discretion in limiting Brown's cross-examination on the subject.[18]

Brown also argues that the trial court's ruling in this regard hampered his ability to impeach the victim. As a general rule, "the rape shield law will not be applied to permit perjured testimony."[19] Here, however, there is no evidence that the victim perjured herself, which eviscerates this claim of error.[20]

5. In multiple enumerations of error, Brown contends that the trial court erred in refusing to declare a mistrial. We review a trial court's denial of a motion for mistrial under an abuse of discretion standard, and "[w]e will reverse the trial court's ruling only if a mistrial is essential to the preservation of the right to a fair trial."[21]

(a) According to Brown, the trial court was required to declare a mistrial after the prosecutor impermissibly bolstered the victim's credibility.[22] In addition to complaining of the fiancé's bolstering testimony, Brown asserts that "the prosecutor violated OCGA § 24-2-2 when she questioned the [victim] about her community activity." Over objection, the trial court permitted the victim to testify that, while in high school, she had been involved with a civic organization that helped mentally ill children. Again, we discern no appropriate reason for admitting such evidence, which is not relevant to the issue of whether the victim had been raped.[23] Nonetheless, we do not agree that the admission of such irrelevant material warranted a mistrial. The victim admitted that she had been addicted to crack cocaine for several years, had lied about her drug use, and had stolen to support her habit. Under these circumstances, the trial court did not abuse its discretion in denying Brown's motion for mistrial simply because limited favorable testimony was also heard by jurors. Moreover, with respect to the testimony regarding the victim's civic activities, Brown never requested a mistrial, thus waiving the issue on appeal.[24]

---

[17] *Richardson v. State*, 256 Ga. App. 322, 325 (1) (568 SE2d 548) (2002), cert. granted, Case No. S02G1698 (September 16, 2002).

[18] See id.

[19] *Wagner v. State*, 253 Ga. App. 874, 878 (3) (560 SE2d 754) (2002).

[20] See id.

[21] (Punctuation omitted.) *Richards v. State*, 250 Ga. App. 712, 714 (3) (552 SE2d 114) (2001).

[22] We note that the State has failed to address this argument on appeal. Court of Appeals Rule 27 (b) (2) provides that Part Two of an appellee's brief "shall contain appellee's argument and the citation of authorities as to each enumeration of error." In failing to adhere to this provision, the State has done a disservice both to this Court and to the people of this State, whom the prosecutor represents.

[23] See OCGA § 24-2-2 ("The general character of the parties and especially their conduct in other transactions are irrelevant matter unless the nature of the action involves such character and renders necessary or proper the investigation of such conduct.").

[24] See *Beaton v. State*, 255 Ga. App. 901, 905 (5) (567 SE2d 113) (2002).

(b) Brown also asserts that a mistrial was warranted after the State elicited hearsay evidence. The victim testified that, during the attack, she heard someone say, "y'all shouldn't have done that to that girl." Brown objected to this statement, which the State contends was admissible as res gestae. Pretermitting whether the statement was admissible, we find its admission harmless. Given the overwhelming evidence that Brown and others took turns sexually violating the victim in front of a sizeable crowd, we fail to see how one comment from a bystander expressing disapproval could have unduly prejudiced Brown's defense.[25]

(c) In a related enumeration of error, Brown asserts that the trial court was required to declare a mistrial after Burke testified that she had spoken to the victim's mother and said that she "thought that [the victim] had been raped by what the kids had said." Although the trial court denied Brown's motion for mistrial, it instructed the jury to disregard the hearsay testimony. Given the trial court's prompt curative instruction, we find that the court did not abuse its discretion in denying the motion for mistrial.[26]

(d) According to Brown, the trial court should have granted a mistrial after Dr. Bashuk, who examined the victim, testified that the victim had been raped. The doctor was asked for his diagnosis, and he responded, "[t]he only diagnosis I recall making is it was a rape sexual assault exam." Contrary to Brown's contention, this statement is not tantamount to saying the victim had been raped. Rather, Dr. Bashuk merely characterized the type of examination he performed. And his testimony in this regard was cumulative, as he had already testified — without objection — that the victim was being examined for an alleged rape and that he used a rape kit. Because Dr. Bashuk did not comment on the ultimate issue, Brown's mistrial argument lacks merit.[27]

(e) Brown alleges that a mistrial was required based upon allegedly improper closing argument in which the prosecutor violated the "golden rule" by asking jurors to place themselves in the victim's shoes. Specifically, the prosecutor argued to jurors that the victim "was in the wrong place at the wrong time. And couldn't it happen to anybody? Couldn't it happen to your mother, to your sister?"[28] The trial court sustained Brown's objection and gave curative instruc-

---

[25] See *Pullin v. State*, 258 Ga. App. 37, 42 (2) (572 SE2d 722) (2002).

[26] See *Farley v. State*, 260 Ga. 816, 818-819 (4) (400 SE2d 626) (1991), overruled on other grounds, *Woodard v. State*, 269 Ga. 317, 319 (2), n. 14 (496 SE2d 896) (1998).

[27] See *Alvarado v. State*, 257 Ga. App. 746, 749 (4) (572 SE2d 18) (2002).

[28] Brown also complains about the prosecutor's argument, questioning whether the jurors could be as honest as the victim regarding drug use. Because Brown failed to object to this alleged improper argument, error, if any, has been waived. See *Hamilton v. State*, 274 Ga. 582, 587 (12) (555 SE2d 701) (2001).

tions, but denied the motion for mistrial. In view of the curative instructions, we find no abuse of discretion in the trial court's ruling.[29]

6. Brown contends that the trial court erred by instructing the jury, with respect to the rape and aggravated sodomy charges, that the element of force may be inferred if the victim lacked the capacity to consent to sex. According to Brown, the victim's capacity was never at issue. We disagree. The victim testified that she had used crack cocaine before she was accosted by Brown and the others, which at least raises an issue as to whether she was under the influence at the time.[30] "In addition, because the State presented evidence of actual force, any error resulting from this charge was harmless."[31]

7. In his final enumeration of error, Brown maintains that he received ineffective assistance. The standard for establishing an ineffective assistance claim is well settled. Brown must demonstrate

> both that his trial counsel's performance was deficient and that counsel's deficiency so prejudiced his defense that a reasonable probability exists that the result of the trial would have been different but for that deficiency. To succeed in his claim, [Brown] must overcome the strong presumption that his counsel's performance fell within the broad range of reasonable professional conduct and that his counsel's decisions were made in the exercise of reasonable professional judgment. We will not reverse on the basis of ineffective assistance of counsel unless trial counsel's conduct so undermined the proper functioning of the adversarial process that the trial could not reliably have produced a just result. Absent clear error and harm, we will affirm the trial court's finding that [Brown] did not receive ineffective assistance of counsel.[32]

Brown alleges that his attorney was ineffective for failing to object to the fiancé's "lecture" about the victim's drug use. The fiancé testified about drug dependency in general as well as methods employed to help the victim overcome her addiction. At the motion for new trial, Brown's trial attorney testified that he did not object to the fiancé's testimony because he thought it might be helpful. Indeed, the entire defense strategy was to portray the victim as an

---

[29] See *Wolke v. State*, 181 Ga. App. 635, 636-637 (3) (353 SE2d 827) (1987).

[30] See *McIntosh v. State*, 247 Ga. App. 640, 644-645 (5) (545 SE2d 61) (2001).

[31] Id. at 645.

[32] (Footnotes omitted.) *Glass v. State*, 255 Ga. App. 390, 400-401 (10) (565 SE2d 500) (2002).

addict who willingly exchanged sexual favors for drugs. Where, as here, a defense attorney's failure to object reflects sound trial strategy, such will not serve as the basis for an ineffectiveness claim.[33]

Brown also argues that his trial attorney was ineffective for failing to object to the admission of his redacted statement, which he contends violated *Bruton*.[34] For the reasons discussed in Division 1, this argument lacks merit.

*Judgment affirmed. Barnes and Adams, JJ., concur.*

DECIDED MARCH 6, 2003 — 

*Lawrence Lewis*, for appellant.

*Paul L. Howard, Jr., District Attorney, Alvera A. Wheeler, Peggy R. Katz, Assistant District Attorneys*, for appellee.

