## A11A1544. TWIGGS v. THE STATE.
(726 SE2d 680)

ADAMS, Judge.

A jury convicted Robert Twiggs on one count each of aggravated child molestation, aggravated sexual battery, child molestation, rape, statutory rape, and incest involving his stepdaughter. Twiggs appeals the trial court's denial of his motion for new trial. We affirm for the reasons set forth below.

Viewed in the light most favorable to the verdict,[1] the evidence showed that Twiggs met the victim's mother in 1998 when the girl was approximately six years old. The family lived in Valdosta until 2006 when they moved to Henry County, where the charges in this case were filed. The victim testified that Twiggs began playing games with her when she was about seven years old, games that always ended with Twiggs sticking his private part in her bottom. Twiggs told the victim not to tell anyone what he did to her because he and his family in New York were in the Mafia, and they would kill everyone in her family. The victim was 15 when the family moved to Henry County, and Twiggs began putting his private part, and sometimes his fingers, in her private part or put his private part into her mouth. This happened two to three times per week.

[1] "On appeal from a criminal conviction, the evidence must be viewed in the light most favorable to the verdict, and the appellant no longer enjoys the presumption of innocence . . . ." (Footnote omitted.) *Brown v. State*, 274 Ga. App. 302 (1) (617 SE2d 227) (2005).

The victim's mother observed Twiggs with the victim at odd hours in the morning when they lived in Henry County, and when the family was still living in Valdosta, the victim's younger brother saw Twiggs doing something to the victim's private area on one occasion, when the victim was wearing only a black tank top. Twiggs told the brother that he was checking to see if she was pregnant. Twiggs and the victim's mother eventually split up, and when, approximately three to four months later, the victim told her mother about these events, her mother contacted the police.

1. Twiggs asserts that he received ineffective assistance of counsel at trial when his attorney (a) failed to challenge the search of his computer as illegal under OCGA § 17-5-24 and (b) failed to object to testimony that improperly bolstered the credibility of the victim and expressed an impermissible opinion as to truthfulness.

To establish his claims of ineffective assistance of counsel, Twiggs must show both that trial counsel's performance was deficient and that the deficient performance was prejudicial to his defense. *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984); *Thomas v. State*, 291 Ga. App. 795, 804 (6) (662 SE2d 849) (2008). "Failure to satisfy either prong of the two-part *Strickland* test is fatal to an ineffective assistance claim." (Footnote omitted.) *Nelson v. State*, 302 Ga. App. 583, 586 (2) (691 SE2d 363) (2010). Moreover,

> [i]n reviewing the trial court's decision, we accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts. Furthermore, there is a strong presumption that the performance of counsel was within the wide range of reasonable professional lawyering, and we cannot reach a contrary conclusion unless defendant successfully rebuts the presumption by clear and convincing evidence. Judicial scrutiny of counsel's performance must be highly deferential.

(Citations and punctuation omitted.) *Bridges v. State*, 286 Ga. 535, 537 (1) (690 SE2d 136) (2010).

(a) Twiggs asserts that his trial counsel should have challenged the search of his computer because it was conducted by an employee of the Federal Bureau of Investigation ("FBI"), not a Georgia peace officer, which he contends was required under OCGA § 17-5-24. That statute provides that "[t]he search warrant shall be issued in duplicate and shall be directed for execution to all peace officers of this

state. However, the judicial officer may direct the search warrant to be executed by any peace officer named specially therein." OCGA § 17-5-24.

At trial, Detective Amanda McCord of the Henry County Police Department testified that on February 15, 2008, she applied for and obtained a search warrant for Twiggs's place of employment to look for computers and other storage media belonging to Twiggs. The search warrant was directed to: "All Peace Officers of the State of Georgia," and McCord conducted the search pursuant to the warrant the same day. That search yielded a Dell desktop computer and a Dell laptop, which was located in a book bag on Twiggs's person. Detective Kelli Bowles Owen of the Henry County Police Department, and a former member of the FBI's Safe Child Task Force, testified that she sought a second search warrant on February 19, 2008 to obtain authority for a computer specialist to conduct a forensic search of the computers to look for evidence related to child pornography and child molestation. Owen's affidavit asked for permission to conduct an off-site search of the hardware and to use "whatever data analysis techniques appear necessary to locate and retrieve the evidence described . . . ." The subpoena signed by the magistrate was directed to: "All Peace Officers of the State of Georgia," but it specifically authorized a search of the computers held by the Henry County Police to be conducted as described in the affidavit provided by Detective Owen. Detective McCord testified that she transported the computers to the FBI for forensic evaluation.

The forensic examination, which apparently occurred at the FBI forensic lab in Atlanta, was conducted by Orlando Figueroa, an FBI forensic computer examiner. Figueroa undertook the examination in response to a police request "to provide a way for the investigator to analyze it for child pornography content." Figueroa preserved the evidence, catalogued it in a useable way, and presented it to the investigator to conduct the investigation. He also ran it against a database of known victims of child pornography maintained by the Child Victim Identification Program at the National Center for Missing and Exploited Children. But after argument among the parties, the State chose not to introduce the results of that comparison. Instead, Figueroa testified only that nude photographs, which the victim previously had identified as pictures taken of her by Twiggs, appeared on Twiggs's laptop in a file labeled "dangerous."

At the hearing on the motion for new trial, Twiggs's trial attorney testified that he originally filed a motion to suppress the evidence

seized in the case, but withdrew it after reviewing the search warrants and determining that they appeared to be in order. But trial counsel testified that at the time he made the decision to withdraw the motion to suppress, he was not aware of the requirement under OCGA § 17-5-24 that search warrants be issued to all peace officers in the state. He stated that had he known of that requirement and had he determined that the FBI employee who conducted the search had not been deputized in Georgia, he would have pursued a motion to suppress.

"When trial counsel's failure to file a motion to suppress is the basis for a claim of ineffective assistance, the defendant must make a strong showing that the damaging evidence would have been suppressed had counsel made the motion." (Citation and punctuation omitted.) *Biggs v. State*, 281 Ga. 627, 631-632 (4) (b) (642 SE2d 74) (2007). Twiggs failed to make such a showing.

Twiggs argues that the evidence from the computers was subject to suppression because Figueroa was a civilian computer analyst, not a Georgia peace officer, and thus he could not execute the search warrant within the requirements of OCGA § 17-5-24. But this Court has previously recognized that civilians, acting under the supervision of police, can properly execute a search warrant. *Bradford v. State*, 184 Ga. App. 459, 460 (1) (361 SE2d 838) (1987) (no violation of OCGA § 17-5-24 when contraband located by private citizens known as "reserve deputies" where they were closely supervised by police and their activities circumscribed). And the Supreme Court of Georgia has considered and rejected Twiggs's argument in the context of a forensic dental examination conducted by a private dentist. As the Supreme Court noted, "it would be unreasonable to suggest that the actual physical gathering of the evidence, utilizing equipment and procedures requiring expert skill and having a high potential for harm to the person being searched, must be done by peace officers." *Harris v. State*, 260 Ga. 860, 863 (3) (401 SE2d 263) (1991). While presumably no potential for human injury existed in the forensic computer analysis, it cannot be disputed that the analysis required expert skill and without such expertise, it is conceivable that evidence may have been overlooked or even destroyed. Moreover, the computer examination was conducted at the direction of Georgia peace officers to enable them to complete their own investigation. Cf. *State v. Harber*, 198 Ga. App. 170 (401 SE2d 57) (1990) (where county officers are present with the warrant at search locale, mere fact that actual physical acts involved in conducting search of the premises may have been performed by campus police does not mean that the search warrant was not executed jointly by campus and county

officers). We conclude, therefore, that no basis existed under OCGA § 17-5-24 for suppressing the results of that analysis.[2]

(b) Twiggs next asserts that his trial counsel was deficient in failing to object to Detective McCord's testimony regarding her forensic interview with the victim. When the State asked McCord whether the victim was "forthcoming with the information she provided . . . in the interview," McCord replied that she was. Twiggs contends that this testimony was improper bolstering.

It is well settled that a witness's credibility may not be bolstered by "the opinion of another, even an expert, as to whether the witness is telling the truth. . . . Credibility of a witness is . . . a matter solely within the province of the jury. OCGA § 24-9-80." *State v. Oliver*, 188 Ga. App. 47, 50 (2) (372 SE2d 256) (1988). And in support of this argument, Twiggs relies upon *Brown v. State*, 260 Ga. App. 77 (579 SE2d 87) (2003). In that case "[b]efore the victim was called to testify, the State called her fiancé and, over objection, asked him to 'describe (the victim) as far as her truthfulness, her honesty.' The fiancé responded, 'in relation to me she has been forthcoming.' " Id. at 79 (2). The Court found "no appropriate reason for admitting the fiancé's testimony regarding the victim's general veracity." Twiggs seizes upon the use of the word "forthcoming" in both cases to argue that we are bound by this holding in *Brown*. But even with that holding, the Court in *Brown*, "[n]onetheless, [found] no grounds for reversal because it is highly improbable that the fiancé's testimony contributed to the verdict" (footnote omitted) in light of the victim's own testimony that she had lied to her fiancé in the past about her drug use. Id. at 80 (2). Given this evidence, the Court "doubt[ed] the jury was overly swayed by the fiancé's testimony that the victim was always forthcoming with him." Id. at 80 (2).

As in *Brown*, we consider McCord's testimony in the context of other evidence at trial. The question here arose in the immediate context of a line of questioning about the nature of forensic interviews and McCord's technique for conducting such interviews. After the prosecutor asked McCord to explain the term "forensic interview" the examination proceeded as follows:

> A: A forensic interview is a specific interview and it is typically only conducted by trained investigators where you try to gather evidence in a case. The interview itself becomes

---

[2] Moreover, we note that Twiggs's trial counsel objected vigorously to Figueroa's testimony on other grounds, including an objection to the introduction of any hearsay evidence from the comparison with the child pornography database, which led to the State's decision not to introduce the results of that comparison.

evidence or the information given to you by who you're interviewing becomes evidence.

Q: Are questions posed a certain way in that type of interview?

A: Absolutely. We do not lead or suggest. There are — we're specifically trained there's a difference between a leading question and a suggestive question. Depending upon the age of the child questions are posed differently. With a teenage child you just have to be very careful not to lead or suggest.

Q: This is the type of interview you conducted with [the victim]?

A: Yes.

Q: When you finish this you prepare a report that's submitted to the prosecutor, correct?

A: Yes.

Q: Was she forthcoming with the information that she provided you in the interview?

A: Yes, she was.

The prosecutor then asked McCord what steps she took next in her investigation, to which McCord ultimately replied that she applied for the search warrant for Twiggs's place of employment. Notably, McCord did not describe what information the victim told her in the forensic interview. At the hearing on the motion for new trial, Twiggs's trial counsel said that he did not recall the question. He did not think, however, that he would have raised an objection, not for any strategic reason, but because he was unaware of the *Brown* case.

We find *Brown* to be distinguishable, however, when the question here is considered in context. After confirming that McCord did not employ improper questioning techniques, the prosecutor asked whether the victim was forthcoming with information during the interview and then asked what McCord did next. Thus, the question appears to have been directed at determining whether the victim provided information that led to further investigation, not at determining whether McCord believed the victim was telling the truth. At most, McCord's testimony addressed how the victim delivered the information, and thus it "addressed only [McCord's] objective observations of [the victim's] behavior, not whether she found [the victim's] statements believable or credible." (Citation and punctuation omitted.) *Damerow v. State*, 310 Ga. App. 530, 537 (4) (a) (ii) (714 SE2d 82) (2011). And, in fact, after Twiggs's counsel raised a hearsay objection, McCord was careful not to divulge any specifics about what she

learned in that interview. Accordingly, we find no error in trial counsel's failure to raise an objection to this testimony as improper bolstering.

2. Twiggs contends that the trial court erred in allowing the State to introduce, without laying a proper foundation, a printed copy of an e-mail that was located in his car at the time of his arrest. We review the trial court's admission of this evidence for an abuse of discretion. *Whitehead v. State*, 258 Ga. App. 271, 275 (1) (d) (574 SE2d 351) (2002).

The printed e-mail was introduced into evidence after McCord testified only that it was found during a search of Twiggs's car. The trial court admitted the document over Twiggs's foundational objection following an off-the-record colloquy among the judge and counsel. The document in question appears to be an e-mail forwarding an attached photograph depicting a clothed female backside, a photograph the victim previously had identified as being a photograph of her taken by Twiggs in their Henry County bathroom. Twiggs argues that McCord's testimony was insufficient to lay a foundation for the introduction of the e-mail printout.

> As a general rule, a writing will not be admitted into evidence unless the offering party tenders proof of the authenticity or genuineness of the writing. There is no presumption of authenticity, and the burden of proof rests upon the proffering party to establish a prima facie case of genuineness.

(Footnote omitted.) *Hollie v. State*, 298 Ga. App. 1, 3 (1) (679 SE2d 47) (2009). And "it has been held that the face of the writing itself, such as the contents, the letterhead, the signature, etc., does not authenticate [a document] in the absence of other evidence showing its genuineness." (Citation omitted.) *Martin v. State*, 135 Ga. App. 4, 7 (3) (217 SE2d 312) (1975). Thus, in the case of an e-mail printout, elements such as website identifiers and e-mail addresses alone would not serve to self-authenticate the e-mail. See *Hollie v. State*, 289 Ga. App. at 3 (1) (trial court properly excluded e-mail from evidence where victim identified the sending e-mail address as hers, but denied sending the e-mail). In any event, no evidence was presented in this case identifying any of the e-mail addresses reflected on the printout.

Moreover, the fact that the printout was found in Twiggs's car, standing alone, was not sufficient to authenticate the document. *Martin v. State*, 135 Ga. App. at 7-9 (3) (page torn from notebook on defendant's person inadmissible without authentication). Compare

*State v. Smith*, 246 Ga. 129, 130 (269 SE2d 21) (1980) (writing admissible where it was found on one defendant's person, writing circumstantially linked defendant to crime, was signed "Danny," and contained references to circumstances which were peculiarly within the knowledge of defendants' brother Danny, who previously had pled guilty to same crime).

Accordingly, the trial court erred in admitting the e-mail printout without requiring the state to lay a foundation to establish that it was genuine. But we find this error to be harmless under the circumstances of this case. "The test for harmless error in a criminal case is whether it is highly probable that the error did not contribute to the judgment." (Citations and punctuation omitted.) *Long v. State*, 265 Ga. App. 605, 607 (1) (595 SE2d 93) (2004). Twiggs was not charged with any offenses relating to the e-mail, the photograph, or the transmission of the photograph. And the victim had already identified the photograph as one Twiggs had taken of her with his phone, and other copies of the photograph were already in evidence based upon this testimony. In addition, other evidence demonstrated that Twiggs had nude pictures of the victim's backside on his computer. The picture attached to the e-mail depicts only a clothed female backside. Accordingly, the e-mail printout was merely cumulative, and its admission was harmless error. See *Dillard v. State*, 272 Ga. App. 523, 526 (3) (612 SE2d 804) (2005); *Long v. State*, 265 Ga. App. at 607 (1). See also *Wright v. State*, 259 Ga. App. 74, 78 (4) (576 SE2d 64) (2003) (Generally, "[t]he admission of cumulative evidence is harmless.") (Citation and punctuation omitted.)

3. Twiggs next contends that he was denied his right to a speedy trial pursuant to OCGA § 17-7-170.

Twiggs's trial attorney filed a written demand for a speedy trial on June 25, 2008, which would have required that he be tried by December 2008. See OCGA §§ 15-6-3 (18); 17-7-170. Twiggs's case was scheduled for trial on November 3, 2008, and the State announced ready. But Twiggs's attorney stated that the State had just provided him that morning with exculpatory medical evidence necessitating that he announce "not ready" for trial. The trial court gave him an additional week. Then on November 10, 2008, Twiggs's trial counsel announced that Twiggs was withdrawing his speedy trial demand and joining with the State in a motion for a continuance until the December calendar.

At the hearing on the motion for new trial, Twiggs's trial counsel stated that he made the announcement in open court after discussing the matter with Twiggs either in person at the courthouse or in a phone call. He could not recall, however, whether Twiggs was present in court when he made the announcement. The attorney also could

not recall why they made the decision to withdraw the speedy trial demand. Twiggs testified, however, that he asked his attorney to file the original speedy trial demand, and the attorney never discussed withdrawing that demand. Twiggs said he was not in court when his attorney withdrew that demand and, in fact, he did not learn that the demand had been withdrawn until mid-2009.

But Twiggs's trial counsel also recalled "a number of times" when the case would be called for trial, and Twiggs would come up with new information, necessitating that they announce "not ready" for trial. On one occasion in August 2009, the parties had actually picked a jury "and the Court was kind enough to dismiss that jury when [his] client told him of some new information that later proved to be untrue." On that occasion, Twiggs told the court that he was "not prepared for his case right now." His case eventually went to trial on October 5, 2009.

> If the defendant is not tried when the demand for speedy trial is made or at the next succeeding regular court term thereafter, provided that at both court terms there were juries impaneled and qualified to try the defendant, the defendant shall be absolutely discharged and acquitted of the offense charged in the indictment or accusation.

OCGA § 17-7-170 (b). But

> [i]f the failure to try the defendant results from a voluntary act of the defendant *or the defense counsel* which results in a continuance of the case to a time outside the period of the demand, however, discharge and acquittal are not required. In such cases, the defendant will be found to have waived his demand for a speedy trial. The burden of showing such waiver is on the State.

(Citations omitted; emphasis supplied.) *Sykes v. State*, 236 Ga. App. 518, 520 (2) (511 SE2d 566) (1999). Here, Twiggs's counsel announced that the demand for speedy trial was withdrawn, and the record in this case supports a finding that counsel made this announcement only after consulting Twiggs. Moreover, counsel announced that Twiggs was making a joint motion with the State for a continuance, and "[a] request for a continuance following a demand for a speedy trial [may] operate[ ] as a waiver of the demand under Georgia law." (Footnote omitted.) *Breazeale v. State*, 290 Ga. App. 632, 637 (11) (660 SE2d 376) (2008). We conclude, therefore, that the State carried its burden of demonstrating that Twiggs waived his demand for a speedy trial.

Although the record is unclear as to whether Twiggs was present when his attorney made this announcement, we know of no requirement that the client be present for the voluntary act by his counsel that results in such a waiver. Thus, for example, our appellate courts have found that a speedy trial demand can be waived by an attorney's failure to file the proper paperwork to excuse his absence in reporting for trial. *Jones v. State*, 276 Ga. 171, 174 (575 SE2d 456) (2003) (filing defective notice of leave of absence); *Linkous v. State*, 254 Ga. App. 43, 47 (561 SE2d 128) (2002) (failure to file proper notice of leave); *Oni v. State*, 268 Ga. App. 840, 841 (602 SE2d 859) (2004) (counsel failed to appear at calendar call, to file conflict letter and to notify court when conflicting trial was concluded). Accordingly, we find no abuse of discretion in the trial court's denial of the motion for new trial on this ground. See *Williams v. State*, 277 Ga. 598, 599 (1) (592 SE2d 848) (2004) (applying abuse of discretion standard in reviewing motion on speedy trial grounds and noting that the trial court's findings and weighing of disputed facts is given deference on appeal).

*Judgment affirmed. Barnes, P. J., and Blackwell, J., concur.*

DECIDED MARCH 27, 2012.

*Amanda R. Flora*, for appellant.

*Tommy K. Floyd, District Attorney, David E. Slemons, Alicia C. Gant, Assistant District Attorneys*, for appellee.

